## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| X-TRA LIGHT MFG INC; dba X-TRA | § | |
| LIGHT MANUFACTURING | § | |
| PARTNERSHIP LTD, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-04-1413 |
| | § | |
| ACUITY BRANDS, INC., ACUITY | § | |
| LIGHTING GROUP, INC., LOWE'S | § | |
| COMPANIES, INC., and LOWE'S | § | |
| HOME CENTERS, INC., | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion for Reconsideration of the Court's March 31, 2006 Order Granting Summary Judgment of No Patent Infringement After October 21, 2002 (Doc. # 85).  For the following reasons, the motion is **DENIED**.

**I. Background**

As the Court set forth in greater detail in its March 31, 2006 Memorandum and Order ("March 31 Order"), this case involves claims brought by Plaintiff X-Tra Light Mfg. Inc. ("X-Tra Light") against Defendants Acuity Brands, Inc. and Acuity Lighting Group, Inc. ("Acuity"), and Defendants Lowe's Companies, Inc. and Lowe's Home Centers, Inc. ("Lowe's"), for patent infringement and tortious interference with prospective business relations.  X-Tra Light alleges that both Acuity and Lowe's infringed U.S. Patent No. 6,428,183 ("the '183 patent") concerning its fluorescent high bay ("FHB") light fixtures, and that Acuity tortiously interfered with its business relationship with Lowe's for the supply of the FHB fixtures.

On March 31, 2006, the Court ruled on the parties' various summary judgment motions, finding that X-Tra Light's '183 patent is not invalid or unenforceable, and that Acuity is not

liable either for tortious interference with prospective business relations or for infringing the '183 patent after October 21, 2002.  X-Tra Light now moves the Court to reconsider its summary judgment of no patent infringement after October 21, 2002, urging that the Court made a manifest error of fact by finding that there was no evidence that Acuity used submittal sheets depicting and describing the infringing product, and thus no evidence that Acuity offered the infringing product for sale, after October 21, 2002.  X-Tra Light asserts three different arguments in support of its motion, which the Court will consider in turn.

## II. Legal Standard for Reconsideration

A motion for reconsideration may be made under either Federal Rule of Civil Procedure 59(e) or 60(b).  *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004).  Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence.  These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives:  (1) finality, and (2) the need to render just decisions on the basis of all the facts."  *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

## III. Analysis

### A. Submittal Sheet for Lowe's Farmington Store

First, X-Tra Light contends that a submittal sheet created by Acuity and submitted to the contractor for the Lowe's Farmington store demonstrates that Acuity used materials relating to the infringing product after October 21, 2002.  X-Tra Light's Resp. to Acuity's Mot. for Summ. J., Ex. 29.  Unlike the submittal sheets previously discussed by the Court, which were prepared

between April and August 2002, the Farmington submittal sheet bears a date of February 2003.[1] Acuity acknowledges that this submittal sheet was created in February 2003, but asserts that it does not identify an accused Acuity fixture or an infringing Acuity product code.

As Acuity points out, the submittal sheet for the Farmington store included three separate catalog numbers.  The first is identified as "Lowe's fixture schedule type F1-NL" and includes the product code "MP1914," which the Court found to be a potentially infringing product code in its March 31 Order.  The second is identified as "Complete fixture catalog number" and does not appear to include any code that the parties have associated with either an infringing or non-infringing fixture.  The third is identified as "Abbreviated manufacturing description" and includes the product code "AMP1036," which, the parties agree, does not relate to any infringing fixture.  Acuity urges, and X-Tra Light does not dispute, that only the second and third catalog numbers are Acuity's own product numbers, while the first is a reference to Lowe's fixture schedule.  That Acuity's Farmington submittal sheet references Lowe's fixture schedule, which includes an infringing code, is unsettling.  If Acuity was aware that Lowe's was still utilizing infringing product codes, it would have been prudent for Acuity to request Lowe's to replace them with the non-infringing product codes.  Acuity's reference to Lowe's fixture schedule is not, however, enough to constitute an offer by Acuity to sell the infringing fixture.  As the Court found in its March 31 Order, Lowe's continued use of the infringing product code in its fixture schedules does not constitute an offer to sell the infringing fixture by Acuity.  Similarly, Acuity's reference to Lowe's fixture schedules cannot be construed as an offer to sell the infringing fixture, particularly when the Lowe's reference is accompanied by Acuity's own product numbers identifying a non-infringing fixture.

---

[1] In its March 31 Order, the Court found that X-Tra Light had failed to present any evidence that Acuity distributed or used the submittal sheets, which were dated April through August 2002, after October 21, 2002.

X-Tra Light contends that the Farmington submittal sheet also visually depicts the infringing fixture, with two fluorescent lights on either side of a raised, central ballast cavity. The fixture description provided on the Farmington submittal sheet similarly makes reference to the infringing fixture, explaining that "[o]ptional top mounted lamps or uplight slots provide the uplight necessary to eliminate the cave effect common in large open spaces." As discussed in the March 31 Order, the top-mounted lamps were a component of the infringing fixture, while the uplight slots would have been a component of a non-infringing fixture. Unlike the reference to Lowe's fixture schedule, this visual depiction and written description directly identify Acuity's infringing fixture as being the subject of the submittal sheet. Before the submittal sheet can be treated as evidence of an offer to sell the infringing fixture, however, X-Tra Light must show that it was distributed together with definite price and quantity terms, as in a package offer. Additionally, in order to show Acuity's liability for any offer made with respect to the Farmington submittal sheet, X-Tra Light must show that Acuity itself participated in the distribution of the submittal sheet as part of such an offer.

X-Tra Light has failed to make either showing. At a status conference held on August 3, 2006, the Court gave X-Tra Light additional time to provide documentation relating to the Farmington submittal sheet or any offer made using this sheet. Although X-Tra Light contends that the Farmington submittal sheet and other submittal sheets were used as part of lighting packages after October 21, 2002, however, X-Tra Light has failed to produce any documents or other evidence that the Farmington submittal sheet was ever distributed as part of a package offer with definite price and quantity terms. Additionally, X-Tra Light has failed to produce documentation in support of its claim that *Acuity* was involved with any such distribution of the Farmington submittal sheet.

Instead, X-Tra Light points to documents related to Lowe's Austin store – namely, a submittal sheet for the Austin store dated October 2002, and a September 2003 email sent by an Acuity employee to Acuity's "Austin Office Group," attached to which were submittal sheets depicting and describing the infringing fixture.  X-Tra Light's Additional Briefing, Exs. 2 and 3. With respect to the October 2002 Austin submittal sheet, however, X-Tra Light faces the same problem as it does with the Farmington submittal sheet, as it has not demonstrated that the Austin sheet was actually distributed as part of a package offer, or that Acuity itself distributed the Austin sheet as part of such a package offer.  Turning to the September 2003 email, the Court agrees that Acuity would be liable for the actions of its employees or agents, including the sending of email.  In this case, however, the email itself does not constitute an offer to sell anything, as it includes no quantity or price terms.  Additionally, as Acuity points out, an internal email from one division of Acuity to another would not constitute an offer for sale by Acuity.

Because X-Tra Light has failed to present evidence that Acuity distributed the Farmington submittal sheet, or any other submittal sheet, as part of a definite, package offer, its motion for reconsideration on this ground is without merit.

**B. Opening Dates of Lowe's Stores**

Additionally, X-Tra Light points out that many of the Lowe's stores for which Acuity's submittal sheets depicting the infringing fixture were prepared were not open for bidding until after October 21, 2002.  X-Tra Light argues that Acuity could not have distributed its submittal sheets before Lowe's created its lighting schedules and specifications for these stores, and that, therefore, Acuity must have distributed these submittal sheets after October 21, 2002.  This assertion, however, is inaccurate.

The existence of submittal sheets for Lowe's stores that were opened for bidding after October 21, 2002 does not show that Acuity distributed any submittal sheets after October 21,

2002, or that Acuity was responsible for any lighting package offers that were made to these

Lowe's stores after October 21, 2002.  As the Court previously found:

> X-Tra Light has failed to present any evidence that Acuity actually distributed the submittal sheets after October 21, 2002.  On the contrary, the evidence tends to show that the submittal sheets were at least prepared prior to October 21, 2002, as the dates printed on the submittal sheets range from April to August 2002, all well before October 21, 2002.  On the submittal sheet for the South Boston store, for example, the date "04/02" appears in the lower, right corner.  X-Tra Light's Resp., Ex. 2 at Lowe's 000540.  X-Tra Light has presented no evidence that Acuity distributed these submittal sheets on later dates, falling after October 21.

March 31 Order at 28. Additionally, as Spencer Bankston, Jr., former Acuity Vice President of

National Accounts testified, the independent contractors that actually submitted the package

offers to Lowe's stores often copied and modified submittal sheets that they had previously

obtained from Acuity, in order to create packages for new stores.  Bankston Dep. 108:9-11.

While the fact that many Lowe's stores were not open for bidding until after October 21, 2002

does tend to show that these *contractors* would have submitted package offers after this date, it

says nothing as to *Acuity's* involvement in the distribution of the package offers, or of the

submittal sheets themselves.  Without some evidence that Acuity distributed submittal sheets as

part of package offers after October 21, 2002, X-Tra Light's cannot demonstrate any manifest

error of fact, and its motion for reconsideration must be denied.

### C. Sales Packages

Finally, X-Tra Light contends that Acuity's sales packages offering the infringing fixture

are dated well after October 21, 2002, showing that Acuity offered the infringing fixture for sale

after this date.  X-Tra Light is correct that package offers including the product codes of the

infringing fixture are dated after October 21, 2002.  X-Tra Light's Sur-Reply to Acuity's Mot.

for Summ. J., Ex. D.  There is no evidence, however, that Acuity had any part in putting together

or distributing these package offers.  On the contrary, each of these packages bears the name of a

separate, independent contractor, such as Rexel Davies or Long Sales Agency.  As Acuity points out, not a single document within these package offers bears the name or signature of Acuity or any Acuity employee, nor is there evidence that any of the package offers were generated by Acuity.  Additionally, X-Tra Light has not produced any evidence that the contractors were representatives or agents of Acuity, such as to make Acuity liable for the contractors' actions, or that the contractors were connected to Acuity in any way.

In its reply in support of its motion for reconsideration, X-Tra Light argues that "offers to sell" by Acuity sales representatives constitute "offers to sell" by Acuity.  This argument is flawed for several reasons.  First, aside from the Farmington submittal sheet, there is no evidence that Acuity representatives distributed submittal sheets depicting the infringing fixture after October 21, 2002.  Even if they had, however, the distribution of submittal sheets by themselves does not constitute an offer to sell, as the sheets can only be construed as an offer if accompanied by definite price and quantity terms.  Furthermore, there is no evidence that any Acuity representative took part in generating or distributing the package offers; rather, these packages were prepared and distributed by the separate, independent contractors.  While Acuity would be liable for the acts of its employees and authorized representatives, there is no evidence that any Acuity representative made an offer to sell the infringing fixture after October 21, 2002.

Finally, in its additional briefing, X-Tra Light asserts that Acuity induced its sales representatives to offer the infringing fixture for sale after October 21, 2002.  Not only is this new theory inappropriately presented at this late stage of consideration, but it is not supported by the evidence presented.  X-Tra Light's theory of inducement rests, in part, on its claim that "Acuity worked with Acuity sales representatives to submit lighting package offers after October 21, 2002."  X-Tra Light's Additional Briefing at 6.  However, as just discussed, there is no evidence that any Acuity employee or representative took part in the preparation or distribution

7

of the package offers.  X-Tra Light has not demonstrated any manifest error of fact in the Court's

March 31 Order with respect to its finding no evidence that Acuity had offered the infringing

fixture for sale after October 21, 2002.

**IV. Conclusion**

X-Tra Light's Motion for Reconsideration of the Court's March 31, 2006 Order Granting

Summary Judgment of No Patent Infringement After October 21, 2002 is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 21st day of August, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT