X-Tra Light Manufacturing Inc.
a/k/a and/or d/b/a X-Tra Light Manufacturing Partnership, Ltd.

v.

Acuity Brands, Inc. and
Acuity Lighting Group, Inc.

04-cv-1413

Jury Instructions

**Instruction No. 1**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

2

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field-he is called an expert witness-is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

3

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Fifth Circuit Pattern Jury Instruction—Civil (2006), 3.1

**Instruction No. 2: Summary of Issues**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1. What amount of damages X-Tra Light has proven.

2. Whether X-Tra Light has proven that Acuity willfully infringed the patent.

AIPLA's Model Patent Jury Instructions, November 2005.

## ISSUE 1: DAMAGES

**Instruction No. 3: Damages - Generally**

You must determine the amount of damages to be awarded X-Tra Light for Acuity's infringement. The amount of those damages must be adequate to compensate X-Tra Light for the infringement. Your damage award should put X-Tra Light in approximately the financial position it would have been in had the infringement not occurred; but in no event may the damage award be less than a reasonable royalty. You must consider the amount of injury suffered by X-Tra Light without regard to Acuity's gain or losses from the infringement. You may not add anything to the amount of damages to punish for the infringement or to set an example.

X-Tra Light has the burden of proving each element of its damages by a preponderance of the evidence.


AIPLA's Model Patent Jury Instructions November, 2005; 35 U.S.C. 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F. 3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs, Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988); *Del Mar Avionics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed. Cir. 1987); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996).

**Instruction No. 4: Preponderance of the Evidence**

The phrase "preponderance of the evidence" means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely than not so.

Fifth Circuit Pattern Jury Instruction—Civil (2006), 3.1

**Instruction No. 5: Date Damages Begin**

The date that X-Tra Light first gave notice to Acuity of its claim of patent infringement is the date from which patent damages may be calculated. That date is disputed by the parties, and it is up to you to determine what that date is. X-Tra Light has the burden to prove by a preponderance of the evidence the date it gave notice of infringement.

If X-Tra Light failed to mark its products, no damages shall be recovered by X-Tra Light until X-Tra Light provided notice to Acuity. If X-Tra Light marked its products, damages shall be recovered from the date of issuance of the '183 patent. If X-Tra Light failed to mark, the date that X-Tra Light first gave notice to Acuity of its claim of patent infringement is the date at which patent damages begin to be calculated. X-Tra Light has the burden to prove by a preponderance of the evidence the date it gave notice.

Notice of infringement may be given in two ways. The first way is to give notice to the public in general. X-Tra Light could have done this by placing the word "patent" or the abbreviation "PAT" with the number of the patent-in-suit on substantially all the products it sold that included the patent invention. This type of notice is effective from the date marking began of substantially all of the products that use the patented invention with the patent number. If less than substantially all of the products that use the patented invention were not marked with the patent number, then notice of infringement has not been given in this way.

A second way X-Tra Light could have provided notice of infringement is to communicate to Acuity a specific charge that Acuity's product infringed the '183 patent. This type of notice is effective from the date it is given.

No damages should be awarded for acts that occurred prior to August 6, 2002.

8

AIPLA's Model Patent Jury Instructions November, 2005; 35 U.S.C. 287(a); *American Medial Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523 (Fed. Cir. 1993); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062-1066 (Fed. Cir. 1987).

**Instruction No. 6: Two Types of Damages – Lost Profits and Reasonable Royalty**

There are two types of damages for patent infringement.

The first type of patent damages is lost profits. Briefly, lost profit damages compensate the patent owner for the additional profit that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

The second type of patent damages is called reasonable royalty. I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

The Federal Circuit Bar Association Model Patent Jury Instructions.

10

**Instruction No. 7: Lost Profits, Types and Burden of Proof**

I will first instruct you about lost profit damages.  Simply stated, lost profit damages are the profits X-Tra Light lost because of the infringement.  They are not the profits Acuity made.

X-Tra Light says that it lost profits because Acuity's infringement took away sales that X-Tra Light would have made.  This is called lost profits due to lost sales.

X-Tra Light also says that it lost profits because it had to lower its prices in order to compete with Acuity's infringement.  X-Tra Light says that because it had to lower its prices, it made less profits on the sales it made than it would have made had it not had to compete with Acuity.  This is called lost profits due to price erosion.

X-Tra Light has the burden to show that it was more probable than not that it would have made additional profits if Acuity had not infringed.

The Federal Circuit Bar Association Model Patent jury Instructions; *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 672 (Fed. Cir. 1988); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

**Instruction No. 8: Lost Profits, Elements of Proof**

X-Tra Light has the burden to prove the amount of its lost profits. To recover lost profits for some or all of Acuity's sales, X-Tra Light must show that but for the infringement, X-Tra Light would have made those sales. You must determine what the customers who purchased Acuity's product would have done if the infringement had not occurred. That is, you must determine which profits result from the patented invention that Acuity sells, and not from other features of Acuity's product.

X-Tra Light can allow you to infer lost profits by proving each of the following factors by a preponderance of the evidence; $\sqrt{}$ $A$ $13$ to $7$



(1)    that there was a demand for the patented product,

(2)    that there were no acceptable non-infringing substitutes,

(3)    that X-Tra Light had the manufacturing and marketing capacity to make the infringing sales actually made by Acuity, and

(4)    the amount of profit that X-Tra Light would have made had Acuity not infringed.

This four factor test is referred to as the Panduit test.

If X-Tra Light proves all of these factors, Acuity may rebut the inference by showing that the inference is unreasonable for some or all of X-Tra Light's lost profits.

I will now explain each of these factors.

AIPLA Guide to Model Jury Instructions, Patent Damages No. 5; *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78, 12 USPQ2d 1026, 1029-30 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990); *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275-77, 227 USPQ 352, 357-58 (Fed. Cir. 1985); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356, 57 USPQ2d 1953, 1964 (Fed. Cir. 2001); *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003).

**Instruction No. 9: Lost Profits, Panduit Factors - Demand**

Demand for the patented product can be proven by significant sales of X-Tra Light's

patented product. Demand for the patented product can also be proven by significant sales of

Acuity's product containing the patented features. However, if you find that Acuity generated

new or different markets by sales efforts or by creating demand because of features other than

those claimed in the '183 patent, the sales of Acuity's product cannot establish a demand for the

patented product.

AIPLA Guide to Model Jury Instructions 2005; *BIC Leisure Prods, Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 926 F.2d 1161, 1165 n.3 (Fed. Cir. 1991); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984).

**Instruction No. 10: Lost Profits, Panduit Factors – Acceptable Non-infringing Substitutes**

To be an acceptable substitute, the substitute product must have the advantages of the patented invention that were important to customers. If, however, the realities of the marketplace are that competitors other than X-Tra Light would likely have captured some or all of the sales made by Acuity, even despite a difference in the products, then X-Tra Light is not entitled to lost profits on those sales. A non-infringing substitute is a product that is or can be sold competitively in the marketplace, but which does not infringe the patent. A product does not infringe a patent when it does not include all the features required by the patent. An acceptable non-infringing substitute is available if, during the damages period, a competitor or Acuity had all the necessary equipment, materials, know-how, and experience to design and manufacture the non-infringing substitute and consumers would have accepted the substitute such that Acuity could have sold the non-infringing substitute instead of the accused lighting fixture at the time those sales were made. If you determine that Acuity's customers would just as likely have purchased a non-infringing acceptable substitute instead of the infringing product, then X-Tra Light has not shown it lost that sale but for Acuity's sales. Factors suggesting that the alternative was not available include whether Acuity had to design or invent around the patented technology to develop an alleged substitute.

*Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); *Standard Havens Prods., Inc. v. Gencor Indus.,* 953 F.2d 1360, 1373 (Fed. Cir. 1991), *cert. denied,* 506 U.S. 817 (1992); *Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1142-43,1143 n.17, (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 926 F.2d 1161, 1166 (Fed. Cir. 1991); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901-902 (Fed. Cir. 1986); *Gargoyles, Inc. v. United States,* 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); *Standard Havens Prods., Inc. v. Gencor Indus.,* 953 F.2d 1360, 1373 (Fed. Cir. 1991), *cert. denied*, 506 U.S. 817 (1992). Model Patent Jury Instructions for The Northern District of California; *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed.Cir. 2003).

14

**Instruction No. 11: Lost Profits, Panduit Factors – Market Share**

It is not necessary for X-Tra Light to prove that X-Tra Light and Acuity were the only two suppliers in the market for X-Tra Light to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by Acuity, then X-Tra Light may be entitled to lost profits on a portion of the infringing sales. The burden is on X-Tra Light, however, to show to a reasonable probability that it would have sold that portion if Acuity's product had never existed. By the same token, even if you find that X-Tra Light and Acuity were the only two suppliers of products having the advantages of the patented product, it does not necessarily mean that X-Tra Light would have made all Acuity's sales. The burden is on X-Tra Light to show that its product competed in the same market with Acuity's infringing product and that it would have made those sales if the infringement had not occurred.

AIPLA Model Patent Jury Instructions November, 2005; *Micro Chem. v. Lextron, Inc.*, 318 F.3d 1119, 1122-1125 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353-1357 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990); *Bic Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993).

**Instruction No. 12: Manufacturing and Marketing Ability**

In deciding whether X-Tra Light lost sales, you should consider whether or not X-Tra Light has proven that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.

X-Tra Light must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for the infringement.

X-Tra Light also must prove that it had the capability to market and sell the additional products.

The Federal Circuit Bar Association Model Patent Jury Instructions; *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551 (Fed. Cir. 1994).

**Instruction No. 13: Lost Profits Due to Price Erosion**

X-Tra Light says that it also lost profits because it had to lower its prices because of Acuity's infringement.  X-Tra Light must prove that it lowered its prices because of the infringement and not for some other reason.

If you find that X-Tra Light suffered price erosion, you may also use the higher price in determining X-Tra Light's lost profits from sales lost because of the infringement.  In calculating X-Tra Light's total losses from price erosion, you must take into account any decrease in sales that might have occurred if X-Tra Light charged a higher price than it did.  This is called price elasticity.

The Federal Circuit Bar Association Model Patent Jury Instructions; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324-25 (Fed. Cir. 2000); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996).  AIPLA Model Patent Jury Instructions November, 2005; *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378-1379 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminium, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minnesota Mining & Mfg. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-1579 (Fed. Cir. 1992); *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1543 (Fed. Cir. 1987); *Lam, Inc. v. Johns - Manville Corp.*, 718 F.2d 1056, 1065  (Fed. Cir. 1983).  Model Patent Jury Instructions For The Northern District of California; *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed.Cir. 2003).

**Instruction No. 14: Lost Profits, Collateral Sales**

In this case, X-Tra Light contends its patented lighting fixture was ordinarily sold with other products, sometimes referred to "collateral products." To recover alleged damages arising from X-Tra Light's alleged lost sales of collateral products X-Tra Light must prove two things:

First, X-Tra Light must prove that it was more likely than not that X-Tra Light would have sold the alleged collateral products but for the infringement.

Second, for a product to be a collateral product, X-Tra Light must prove that the alleged collateral products are, when considered with the patented product, like components of a single assembly or parts of a complete machine. X-Tra Light is not entitled to receive lost profit or reasonable royalty damages for products and services that may be sold with the patented product for convenience or business advantage that are not functionally part of the patented product.

AIPLA Model Patent Jury Instructions November 2005; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-1551 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984). The Federal Circuit Bar Association Model Patent Jury Instructions; *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349 (Fed Cir. 1999); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952-53 (Fed. Cir. 1995);; *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

**Instruction No. 15: Amount of Lost Profits**

If X-Tra Light has proven that it lost profits due to infringement by Acuity, then you are to find the amount of profits that X-Tra Light lost. X-Tra Light must prove the amount of its lost profits to a reasonable probability.

The amount of lost profits damages should not include amounts that are merely speculation. However, if the reason that X-Tra Light has to speculate about the amount of its lost profits is because Acuity did not keep records, such as records of its sales, then you should resolve doubts as to the amount against Acuity.

The Federal Circuit Bar Association Model Patent Jury Instructions; *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

**Instruction No. 16: Reasonable Royalty**

X-Tra Light is asking for damages in the amount of a reasonable royalty as an alternative to lost profits. If you find that X-Tra Light has proven lost profits for all of Acuity's infringing sales, then the damages award to X-Tra Light should be those lost profits.

If you find that X-Tra Light has not proven that it should recover lost profits, or that it has only proven lost profits for some of Acuity's infringing sales, then for those infringing sales for which you do not award lost profits, you should determine the amount X-Tra Light has proven to be a reasonable royalty. You should not award "reasonable royalty" damages for any acts for which you award "lost profit" damages.

The Federal Circuit Bar Association Model Patent Jury Instructions; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357-60 (Fed. Cir. 2001); *Makurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989).

**Instruction No. 17: What Is a Reasonable Royalty?**

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before Acuity began selling its infringing product. You should assume that Acuity and X-Tra Light knew at that time such things as the level of sales and profits that Acuity would make using the invention. You should also assume that X-Tra Light was willing to grant Acuity a license to sell the patented invention and that Acuity was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that X-Tra Light and Acuity would consider in setting the amount Acuity should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty. You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.





2. Royalties paid by Acuity or by others for patents comparable to the '183 patent.

3. Whether or not X-Tra Light had a policy of licensing or not licensing the patent.

4. Whether or not X-Tra Light and Acuity are competitors.

21

5. Whether being able to use the patented invention helps in making sales of other products or services.

6. The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7. The advantages and benefits of using the patented invention over products not claimed in the '183 patent.

8. The extent of Acuity's use of the patented invention and the value of that use to Acuity.

9. Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the fluorescent light fixture market for use of patented inventions comparable to the inventions claimed in the '183 patent.

10. The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Acuity.

11. Expert opinions as to what would be a reasonable royalty.

The Federal Circuit Bar Association Model Patent Jury Instructions; *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y 1970).

## ISSUE: WILLFUL INFRINGEMENT

### Instruction No. 18: Willful Infringement

You are instructed that where a potential infringer has actual notice of another's patent rights, the potential infringer has an affirmative duty of due care not to infringe a valid and enforceable patent. Willfulness must be proven by clear and convincing evidence showing that:

1. Acuity had actual knowledge of X-Tra Light's patent, and

2. Acuity had no reasonable basis for believing (a) that Acuity's product did not infringe X-Tra Light's patent or (b) that X-Tra Light's patent was invalid.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to, whether Acuity intentionally copied the claimed invention or a product covered by X-Tra Light's patent, whether Acuity exercised due care to avoid infringing the patent, and whether Acuity presented a substantial defense to infringement.

AIPLA Model Patent Jury Instructions November, 2005; *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) *(*en banc*); Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed.Cir. 1996); *In re Hayes Microcomputer Products, Inc.*, 982 F.2d 1527, 1543 (Fed.Cir. 1992); *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir. 1992); *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 510-11 (Fed.Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed.Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir. 1988).

**Instruction No. 19: Clear and Convincing Evidence**

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue. This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

Fifth Circuit Pattern Jury Instruction—Civil (2006), 2.14

X-Tra Light Manufacturing Inc.
a/k/a and/or d/b/a X-Tra Light Manufacturing Partnership, Ltd.

v.

Acuity Brands, Inc. and
Acuity Lighting Group, Inc.

04-cv-1413

Jury Interrogatories

## ISSUE 1: DAMAGES

1. What is the earliest date that X-Tra Light has proven it provided notice of infringement to

Acuity or marking notice to the public?

DATE: _8/6/02_

*Go on to the next question.*

### I. Lost profits damages

#### A. Lost profits due to lost sales

2. Has X-Tra Light proven by a preponderance of the evidence that there was a demand for the

patented product?

Yes _✓_    No_____

*If yes, go on to the next question; if no, skip to question 12.*

3. Has X-Tra Light proven by a preponderance of the evidence that there were no acceptable

non-infringing substitutes available for the patented product?

Yes _~~✗~~_    No _✓_

*If yes, go on to the next question; if no, skip to question 12.*

4. Has X-Tra Light proven by a preponderance of the evidence that X-Tra Light had the

manufacturing and marketing capacity to make the sales of the patented product, and any

collateral products that you may have found, that were made by Acuity?

Yes_____    No_____

*If yes, go on to the next question; if no, skip to question 12.*

26

5. Has X-Tra Light proven by a preponderance of the evidence that "but for" Acuity's sales of the patented product, X-Tra Light would have made such sales?

Yes_____ No_____

*If yes, go on to the next question; if no, skip to question 12.*

6. What amount of lost profits damages for lost sales of the patented product has X-Tra Light proven by a preponderance of the evidence?

$_____

*Go on to the next question.*

**B. Lost profits due to price erosion**

7. Has X-Tra Light proven by a preponderance of the evidence that X-Tra Light had to lower the price of the patented product because of Acuity's sales of the patented product and not for some other reason?

Yes_____ No_____

*If yes, go on to the next question; if no, skip to question 13.*

8. What amount of lost profits damages from erosion of the price of the patented product has X-Tra Light proven by a preponderance of the evidence?

$_____

*Go on to the next question.*

27

**C. Lost profits due to collateral sales**

9. Has X-Tra Light proven that any non-patented products are "collateral products"?

Yes_____ No_____

*If yes, please list the non-patented products below:*

*If no, skip to question 13.*

10. Has X-Tra Light proven by a preponderance of the evidence that X-Tra Light would have sold the collateral products "but for" the infringement?

Yes_____ No_____

*If yes, go on to the next question; if no, skip to question 13.*

11. What amount of lost profits damages from lost sales of collateral products has X-Tra Light proven by a preponderance of the evidence?

$_____

*Skip to question 13.*

28

## II. Reasonable royalty damages

*Answer the following question ONLY if you have found that there were sales of the patented product by Acuity for which you did NOT award any type of lost profit damages.*

12. What amount of reasonable royalty damages for sales by Acuity of the patented products do you find that X-Tra Light has proven?

$ 25,124

*Go on to the next question.*

29

## ISSUE 2: WILLFULNESS

13. Has X-Tra Light proven by clear and convincing evidence that Acuity willfully infringed the patent-in-suit?

Yes_____ No___✓___

Jui Hemingua
2/16/07